UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO.

FILED
CHARLOTTE, N. C.
JUL 27 2005
U. S. DISTRICT COURT
W. DIST. OF N. C.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | BILL of INDICTMENT |
| | ) | |
| v. | ) | Violation: |
| | ) | 18 U.S.C. § 371 |
| | ) | 17 U.S.C. § 506 |
| | ) | 18 U.S.C. § 2319 |
| GEORGE C. STOUTENBURGH | ) | 18 U.S.C. § 2 |

3:05cr283-Mu

THE GRAND JURY CHARGES:

Background

At all times relevant to this Indictment:

1. During the 1990s, individuals skilled in cracking digital copyright protection systems organized themselves into national and international groups called "warez" groups after the term "software." These groups are dedicated to intellectual property "piracy," that is, the unauthorized, illegal reproduction and distribution of copyrighted computer software, including games, and digital entertainment, including movies and music. Warez groups distribute pirated software, movies and music over the Internet, and compete with one another to be the first to release new, high quality pirated products, within an elaborate underground Internet society, known as the "warez scene." Due in part to the activities of warez groups, pirated versions of software applications, movies and music are available worldwide, electronically and on optical disc, sometimes even before they are made commercially available to the public.

2. Warez groups are often structured, hierarchical organizations comprised of members in various countries who have specialized skills and roles in the piracy of digitized intellectual property. Some warez groups specialize in obtaining "pre-release" intellectual

property for piracy, often from company or distribution insiders, or software testers, who have access to final versions of new products which have yet to be released to the public. Other warez groups concentrate on "cracking" copyright protection systems by removing or otherwise circumventing copyright protection controls like encryption, serial numbers, tags, duplication controls, and/or security locks. Still other groups or individuals act as couriers, distributing pirated intellectual property over the Internet to warez sites worldwide.

3. Warez members typically store their pirated intellectual property on servers employing a protocol known as a file transfer protocol ("FTP") which allows other individuals to download pirated product from, and upload pirated product to, that server. Access to warez FTP servers, or sites, is nearly always password-protected, and many site operators protect their cache of pirated software, movies and music, through a combination of sophisticated security measures.

4. Members of the warez scene frequently communicate with each other over the Internet using "real time" software applications and closed channels, such as "Internet Relay Chat" ("IRC"), as well as encryption to avoid detection by law enforcement. As a further security precaution, most warez members conceal their Internet identities by assuming aliases, and many disguise their Internet addresses, and thus their true locations, by routing Internet communications through another computer known as a "virtual host" or "bounce box" which is configured to appear falsely as the source of the communication.

5. The reasons why individuals become members of warez groups vary. Common to virtually all warez members, however, is the desire for personal financial gain through access to vast quantities of free software, movies and music available on warez FTP sites. A few of the larger warez groups also sell their pirated product for commercial gain. Other motives besides profit include the thrill and social comradery members obtain through

clandestine participation in the illegal activity; and the reputation and fame that attends membership and participation in the "top" warez groups.

## COUNT ONE
### (Conspiracy)

6. Paragraphs one through five of this Indictment are hereby realleged and incorporated as if fully set forth herein.

Object of the Conspiracy

7. From on or before April 10, 2003, through April 21, 2004, both dates being approximate and inclusive, in Mecklenburg County, in the Western District of North Carolina, and elsewhere, the defendant,

GEORGE C. STOUTENBURGH,

did knowingly and voluntarily combine, conspire, confederate, and agree with others, willfully and for purposes of private financial gain, to infringe a copyright by the reproduction and distribution, during a 180-day period, of at least ten (10) copies of one (1) or more copyrighted works which have a total retail value of more than $2,500, in violation of Title 18, United States Code, Section 2319(a), (b)(1) and (c)(1), and Title 17, United States Code, Section 506(a)(1) and (a)(2).

Defendant's Manner and Means within the Conspiracy

8. The ways, manner and means by which the defendant, GEORGE C. STOUTENBURGH, sought to achieve the objects of this conspiracy included, but were not limited to, the following:

    a. It was a part of the conspiracy that the defendant, GEORGE C. STOUTENBURGH, would become an active participant in the the warez scene.

    b. It was further a part of the conspiracy that the defendant, GEORGE C. STOUTENBURGH, would operate and control an FTP warez server named "Run For

3

Cover" or "RFC" located in Colorado.

   c.   It was further a part of the conspiracy that the defendant, GEORGE C. STOUTENBURGH, would allow other co-conspirators to access "Run for Cover" so that they could upload thousands of pirated copyright-protected digital titles, consisting of software applications, computer games, movies and music, for further distribution, and could download thousands of such copyright-protected digital titles for further distribution and their own personal use and financial gain.

   d.   It was further a part of the conspiracy that the defendant, GEORGE C. STOUTENBURGH, would use the aliases "Descent" and "Exodia" during his Internet, warez activities.

   e.   It was further a part of the conspiracy that the defendant, GEORGE C. STOUTENBURGH, would download pirated, copyright-protected digital titles from warez FTP sites for his own personal use.

Overt Acts

   9.   In furtherance of the conspiracy, and to accomplish its unlawful objectives, the defendant, GEORGE C. STOUTENBURGH, from on or before May 2, 2003, through April 21, 2004, stored in excess of 6,000 pirated, copyright-protected software applications, computer games, movies and music on an FTP site and made them available for downloading. Each time these pirated works were uploaded, made available or downloaded, an overt act was committed in furtherance of the conspiracy.

   10.   In furtherance of the conspiracy, and to accomplish its unlawful objectives, the defendant, GEORGE C. STOUTENBURGH, from April 10, 2003, through April 20, 2004, in the Western District of North Carolina and elsewhere, uploaded or caused to be uploaded more than 100 digital files, which were pirated, copyright-protected software applications,

4

Case 3:05-cr-00283-FDW-DCK   Document 1   Filed 07/27/05   Page 4 of 7

movies and television shows, to warez FTP sites and downloaded or caused to be downloaded more than 100 such files from warez FTP sites. Each such upload and download constituted an overt act. Among these overt acts, to enumerate but a few, were the following:

    a. On April 14 and 15, 2003, the defendant, GEORGE C. STOUTENBURGH, uploaded or caused to be uploaded to a warez FTP server located in the Western District of North Carolina, a pirated, copyright-protected digital title known as *The Shawshank Redemption,* a movie.

    b. On July 20, 2003, the defendant, GEORGE C. STOUTENBURGH, uploaded or caused to be uploaded to a warez FTP server located in the Western District of North Carolina, a pirated, copyright-protected digital title known as *Bruce Almighty*, a movie.

    c. On September 2, 2003, the defendant, GEORGE C. STOUTENBURGH, uploaded or caused to be uploaded to a warez FTP server located in the Western District of North Carolina, a pirated, copyright-protected digital title known as *Quickbooks 2003 Pro*.

    d. On November 11, 2003, the defendant, GEORGE C. STOUTENBURGH, downloaded or caused to be downloaded to a warez FTP server located in the Western District of North Carolina, a pirated, copyright-protected digital title known as *The Matrix Reloaded,* a movie.

    e. On April 20, 2004, the defendant, GEORGE C. STOUTENBURGH, downloaded or caused to be downloaded from a warez FTP server, located in the Western District of North Carolina, a pirated, copyright-protected digital title known as *Cliffhanger, Special Edition,* a movie.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
(Copyright Infringement)

11. Paragraphs one through five of this Indictment are hereby realleged and incorporated as if fully set forth herein.

12. From on or about October 27, 2003, through April 21, 2004, in Mecklenburg County, in the Western District of North Carolina, and elsewhere, the defendant,

**GEORGE C. STOUTENBURGH,**

willfully, and for purposes of private financial gain, did infringe a copyright by the reproduction and distribution, during a 180-day period, of at least ten (10) copies of one (1) or more copyrighted works which have a total retail value of more than $2,500.

All in violation of Title 18, United States Code, Sections 2319(a), (b)(1) and (c)(1) and 2(a) and (b), and Title 17, United States Code, Section 506(a)(1) and (a)(2).

## FORFEITURE ALLEGATIONS

13. Paragraphs one through twelve of this Indictment are hereby realleged and incorporated as if fully set forth herein.

15. Pursuant to Title 17, United States Code, Section 506(b), upon conviction of the offense set forth in this Indictment, GEORGE C. STOUTENBURGH, the defendant herein, shall forfeit all infringing copies, and all implements, devices and equipment used in the manufacture of such infringing copies. Such property includes, but is not limited to, the following items seized by federal agents from the premises of Axis Internet, Inc., located

at 910 16th Street, Suite 1110, Denver, Colorado, on April 21, 2004, during the execution of a search warrant:

1. One white-beige computer configured to operate as an FTP server known as Run For Cover or RFC with storage capacity in excess of one terabyte; and

2. One Black Rock server, labeled "Avalanche."

DATED:

A TRUE BILL.

_____
FOREPERSON

GRETCHEN C. F. SHAPPERT
United States Attorney

_____
COREY F. ELLIS
Assistant United States Attorney

ERIC J. KLUMB
Senior Counsel
U.S. Department of Justice

7